# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARNIECIA SMITH, individually and on behalf of a class of persons similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| ) | Case No. 11-cv-2061 |
| v. ) ) | Judge Robert M. Dow, Jr. |
| ERJ DINING, LLC and ERJ DINING IV, LLC, ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants ERJ Dining, LLC and ERJ Dining IV, LLC's motion to compel arbitration and dismiss Plaintiff Larniecia Smith's complaint or, in the alternative, to stay pending arbitration [21]. For the reasons set forth below, the Court respectfully denies Defendants' motion without prejudice and sets this matter for status hearing on February 27, 2012 at 10:15 a.m.

**I.     Background**

Plaintiff Larniecia Smith works as a server at a Chili's restaurant in Wheaton, Illinois. Defendants ERJ Dining, LLC and ERJ Dining IV, LLC (collectively, "Defendants") are Kentucky limited liability companies that own and operate Chili's restaurants throughout the United States. As a server, Plaintiff is paid on an hourly basis in the form of wages and tips. Plaintiff works as a "tipped employee," for Defendants, which means that in computing her minimum wage, Defendants are allowed under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 203(m), and Section 4(c) of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/4(c), to treat as wages a certain amount of tips she receives.

On behalf of herself and all others similarly situated, Plaintiff sued Defendants under the FLSA and IMWL, claiming that they have a policy and practice of (1) failing to pay their hourly employees the proper amount of overtime wages; and (2) requiring their tipped employees to spend a substantial amount of time during their shifts performing "non-tipped" or "indirectly related work," leading to their failure to pay their tipped employees the full amount of minimum wage. Plaintiff purports to bring her FLSA claims as a nationwide collective action and she seeks to certify her claims under the IMWL as a class action.

In response to Plaintiff's lawsuit, Defendant moved to compel arbitration and to dismiss Plaintiff's complaint or, in the alternative, to stay the case pending arbitration of Plaintiff's claims. Defendants attached to their motion an arbitration agreement that Plaintiff signed on September 27, 2007 as a condition of continued employment with Defendants. Under the agreement, Plaintiff agreed to arbitrate "any legal or equitable claims or disputes arising out of or in connection with the employment, terms and conditions of employment, or termination of employment * * *." (Def. Mot. to Compel Arb., Ex. A.) The agreement states that it "applies to all disputes involving legally protected rights (e.g., local, state and federal statutory, contractual or common law rights)." It is silent on the issue of class action lawsuits.

The arbitration agreement further states that arbitration proceedings would take place in Dallas, Texas in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association. The arbitrator, chosen by mutual agreement of the parties, would have the authority to coordinate and limit pre-arbitration discovery. The arbitrator's decision would be "exclusive, final and binding on both parties." (Def. Mot. to

Compel Arb., Ex. A.) Under the agreement, the employee would be entitled to a lawyer at her own expense and, unless otherwise awarded by the arbitrator, the costs and expenses would "be borne evenly by the parties." (Def. Mot. to Compel Arb., Ex. A.)

## II. Discussion

Before reaching the merits of Defendants' motion, the Court must address a threshold venue question raised only tangentially by the parties. The Seventh Circuit has held that a district court does not have the authority under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to compel arbitration in another district. See *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 808 (7th Cir. 2011). Nor can a district court order "arbitration to take place within its district in contravention of a freely negotiated forum selection clause." *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995); *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) (quoting *Merrill Lynch, Pierce, Fenner & Smith*, 49 F.3d at 327 ("When an arbitration clause in a contract includes a forum selection clause, 'only the district court in that forum can issue a § 4 order compelling arbitration.'")). Here, the arbitration agreement includes a clause stating that "[t]he arbitration proceedings shall take place in Dallas, Texas." Because the parties agreed to arbitrate in Texas, this Court lacks the authority to compel arbitration. See *Ansari v. Qwest Comms. Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) (collecting cases and agreeing with the "majority view [that] holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4").

Defendants attempt to circumvent this rule (without directly acknowledging it)[1] by offering to hold arbitration proceedings in this judicial district. (See Mot. to Compel Arb. at 4

---

[1] Although the rule is not jurisdictional, see *Image Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1052 (10th Cir. 2006) (stating that the "rule is one of venue which the parties in this case have

("And, if the Court compels arbitration, Defendants agree that such proceedings take place in Chicago, Illinois.").) Thus, the question for the Court is whether Defendant's willingness to arbitrate in Illinois gives this Court the authority to compel arbitration in Illinois instead of Texas.

"[A]rbitration is * * * a matter of contract between the parties" to which "courts generally * * * should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). Both parties cite to Illinois law in their briefs; accordingly, the Court will apply Illinois law here. See *Faulkenberg*, 637 F.3d at 809.[2] Under Illinois law, "a defendant's after-the-fact offer" to modify the terms of an arbitration agreement, even if the modification favors the plaintiff, does not affect the court's analysis of the original agreement to arbitrate. *Cf. Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 259 (Ill. 2006) (holding that a defendant's later "offer to pay the costs of arbitration should not be allowed to preclude consideration of whether the original arbitration clause is unconscionable").[3] "[T]he party who drafted the provision 'is saddled with the

---

waived"), the Court finds that the parties have not waived the issue here. Both parties reference the issue or cases relevant to the Court's analysis of the issue in the context of Plaintiff's argument as to the validity of the agreement.

[2] Federal courts sitting in diversity must apply the choice-of-law rules of the forum state in which they sit. *Wildey v. Springs*, 47 F.3d 1475, 1480 (7th Cir. 1995); see also *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). Recognizing the wisdom of the Seventh Circuit's advice that "'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states,'" the Illinois Supreme Court has stressed that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears Roebuck & Co.*, 879 N.E.2d 893, 898 (2007) (quoting *Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992)). The parties have only cited Illinois law in their briefs and the Court has not identified any difference between the laws of Illinois and Texas that would affect the disposition of the instant motion.

[3] In Texas, as in Illinois, "[a] modification must satisfy the elements of a contract: a meeting of the minds supported by consideration." *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). Because Plaintiff has not accepted Defendants' offer to modify the terms of the agreement, there was no valid modification.

4

consequences of the provision *as drafted*.'" *Id.* (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 677 (6th Cir. 2003) (emphasis in original)).

This is consistent with the law of contract modification. A contract modification changes the original contract "in one or more respects that introduces new elements into the details of the contract and cancels others, but leave the general purpose and effect undisturbed." *Nebel, Inc. v. Mid-City Nat. Bank of Chicago*, 769 N.E.2d 45, 50-51 (Ill. App. 1st Dist. 2002). "A valid modification must satisfy all criteria essential for a valid contract, including offer, acceptance and consideration." *Id.* at 51. Here, although there was an offer to modify the contract, Plaintiff never accepted. While Plaintiff "certainly could have accepted [Defendants'] offer" to arbitrate in Illinois, Defendants "cannot compel her to do so." *Kinkel*, 857 N.E.2d at 259. Without a valid contract modification, the Court must look to the original contract to determine the forum of the arbitration.

The Seventh Circuit has not held otherwise. In *Livingston v. Associates Finance, Inc.*, 339 F.3d 553 (7th Cir. 2003), in ruling on the plaintiffs' argument that the arbitration clause was unconscionable, the court took into account the fact that the defendant agreed to pay all costs associated with arbitration. *Id.* at 557. While the arbitration clause in that case stated that the party seeking arbitration must pay the filing fees, it further provided that the defendant may pay the arbitration costs at the plaintiffs' request if the plaintiffs were unable to do so themselves. *Id.* at 554-55, 557 n.3. That is not the case here. The arbitration agreement that Plaintiff signed clearly states that "[t]he arbitration proceedings shall take place in Dallas, Texas," and contains no provision for changing the forum. And although the agreement states that the arbitration would be governed by the National Rules for Resolution of Employment Disputes of the American Arbitration Association in effect at the time that the demand for arbitration is made,

5

those rules do not appear to have a provision for bypassing a forum clause, unless, perhaps, the parties agree on a separate location. See Employment Arbitration Rules and Mediation (effective Nov. 1, 2009), ¶ 10 Fixing of Locale, available at http://www.adr.org/sp.asp?id=32904#aaa (last visited Feb. 1, 2012) ("If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale.") Thus, because the arbitration agreement in this case does not provide for the unilateral modification of the forum clause, *Livingston* is easily distinguishable.

In sum, because (1) the arbitration agreement contains a forum clause that states that arbitration proceedings are to take place in Dallas, Texas; (2) under applicable Illinois law, a party may not unilaterally modify (or waive) the forum identified in the agreement; and (3) Plaintiff has not accepted Defendants' offer to modify the agreement, the Court lacks the authority to compel arbitration in either Texas or Illinois. Accordingly, Defendants' motion to compel arbitration and to dismiss Plaintiff's complaint or, in the alternative, to stay litigation pending arbitration [21] is denied without prejudice. If Defendants wish to pursue enforcement of the arbitration agreement, "the proper procedure" is for Defendants to bring a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). See *Faulkenberg*, 637 F.3d at 808 (citing *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003)). Alternatively, Defendants may bring an action under § 4 of the FAA in district court in Dallas, Texas – a court that would have the authority to compel arbitration of Plaintiff's claims. See 9 U.S.C. § 4. If Defendants decide to take that route, they may file a motion asking this Court to stay this case pending resolution of the arbitration issue in Texas. See *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2004) (discussing the

inherent power of a court to stay proceedings in the interest of "economy of time and effort for itself, for counsel, and for litigants") (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)); *cf. AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (noting the "liberal federal policy favoring arbitration"). Of course, if Plaintiff decides to accept Defendants' offer to arbitrate the case here in Illinois and the parties can agree on the scope of the arbitration, they are free to do that as well.[4]

### III. Conclusion

For the foregoing reasons, Defendants' motion to compel arbitration or, in the alternative, to stay litigation pending arbitration [21] is respectfully denied. The Court sets a status hearing for February 27, 2012 at 10:15 a.m., at which time Defendants shall report to the Court how they wish to proceed.

Dated: February 10, 2012

Robert M. Dow, Jr.
United States District Judge

---

[4] Because Defendants still may be able to present their motion to compel arbitration in an appropriate forum, this Court declines to address at this time the panoply of arbitration-related issues implicated in the present motion and response – *i.e.*, whether the arbitration clause is unconscionable and whether any arbitration should be bilateral or classwide. Those matters may be best addressed by a court that can grant the ultimate relief requested or, depending on the route Defendants choose to take, in a ruling on a motion to dismiss for improper venue. See *Faulkenberg*, 637 F.3d at 810-11. In a similar vein, the Court will grant (in a separate minute order) Plaintiff's motion for leave to submit supplemental authority [30], as to which Defendants have filed a response [34], but will not express any views at this time on the relevance, if any, of the supplemental authority on the arbitration-related issues in this case.