**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LARNIECIA SMITH, ) | | |
| individually and on behalf of a class ) | | |
| of persons similarly situated, ) | | |
| ) | | |
| ) | | |
| Plaintiff, ) | | Case No.: 11-cv-2061 |
| ) | | |
| v. ) | | |
| ) | | |
| ERJ DINING, LLC and ) | | |
| ERJ DINING IV, LLC, ) | | Judge Robert M. Dow, Jr. |
| ) | | |
| Defendants. ) | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's renewed motion for class certification [41], Plaintiff's motion to substitute party [44], Plaintiff's motion for leave to file a second amended complaint [48], Plaintiff's motion to toll the statute of limitations [53], and proposed Intervenor Plaintiff's motion to intervene [56]. For the reasons stated below, the Court concludes that it lacks subject matter jurisdiction to further adjudicate this case. Accordingly, all pending motions are stricken without prejudice and this case is dismissed without prejudice.

**I.       Background**

As the Court observed during the November 7, 2012 hearing, "nothing in this case comes easy." Although the factual underpinnings of this case are fairly straightforward, its procedural progression has been anything but.

Plaintiff Larniecia Smith worked as a server at a Chili's restaurant in Wheaton, Illinois. The restaurant is owned and operated by – and Plaintiff was employed by – one or both

1

Defendants, ERJ Dining, LLC and ERJ Dining IV, LLC. On March 31, 2011, Plaintiff Smith filed an amended complaint, alleging that Defendants have a policy and practice of failing to pay their hourly employees the proper amount of overtime wages. Her complaint also alleged that Defendants have a policy and practice of requiring their tipped employees to spend substantial amounts of time performing "non-tipped" or "indirectly related" work, which led to their tipped employees earning less than minimum wage. Plaintiff asserted claims under both the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.* ("IMWL"). The FLSA claims gave rise to federal question jurisdiction (see 29 U.S.C. § 216(b); 28 U.S.C. § 1331), while the state law claims were within the Court's supplemental jurisdiction. See 28 U.S.C. § 1367(a).[1]

Plaintiff Smith brought all of her claims on behalf of herself and all similarly situated employees of Defendants. She purported to bring her FLSA claims as a nationwide collective action and immediately sought to certify her IMWL claims as a class action under Federal Rule of Civil Procedure 23(b)(3). The Seventh Circuit has clarified that "these two distinct types of aggregate litigation may co-exist within one case," notwithstanding the seemingly contradictory nature of opt-in FLSA actions on the one hand (see 29 U.S.C. § 216(b)) and opt-out Rule 23(b)(3) actions on the other. *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 973-74 (7th Cir. 2011). Although Plaintiff repeatedly has indicated an "inten[t] to file a separate motion seeking conditional collective action certification of her FLSA claims shortly" (see docket entry 5 at 1

---

[1] Given that both Defendants are Kentucky limited liability companies, it is possible that complete diversity exists among the parties. But given the nature of the lawsuit, "it is exceedingly unlikely that any one plaintiff satisfies the amount-in-controversy requirement." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 979 (7th Cir. 2011); see also *Travelers Property Cas. v. Good*, 689 F.3d 714, 717 (7th Cir. 2012). Notably, neither the operative complaint nor anything else in the record make any mention of diversity jurisdiction or 28 U.S.C. § 1332(a). See [44] ¶ 7; [50] at 2 (asserting jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1967); [61] at 2-3. Accordingly, the Court "proceed[s] on the assumption that diversity jurisdiction is out of the picture." *Ervin*, 632 F.3d at 979.

n.1; docket entry 41 at 1 n.1), and Defendant called the absence of such a motion to her attention at least once (see docket entry 23 at 3), Plaintiff Smith has never sought conditional approval[2] of the federal collective action. See *Ervin*, 632 F.3d at 974. Of course, conditional certification is only a preliminary step in the process of turning a one-Plaintiff claim for relief under the FLSA into an actual collective action. Conditional certification facilitates the sending of notice to *potential* claimants, but the statute does not confer "party plaintiff" status on an employee "unless he gives his consent in writing to become such a party and such consent is filed in the court." 29 U.S.C. § 216(b).

Approximately two months after Plaintiff filed her initial complaint, the case took a lengthy detour. Specifically, on May 23, 2011, Defendants filed a motion to compel arbitration and to dismiss Plaintiff Smith's complaint, or in the alternative, to stay the case pending arbitration. The Court devoted substantial resources to sorting out the complex issues presented by that motion. On February 10, 2012, the Court issued a memorandum opinion and order denying the motion without prejudice on the ground that it lacked authority to compel arbitration in the forum provided for under the agreement and setting the case for further status to determine whether Defendants wished to pursue other options for enforcing the arbitration provisions of the agreement. At that February 27 status hearing, Defendants stated that they would prefer to forgo the arbitration option and litigate the case in court. See Tr. 1, Feb. 27, 2012. The Court then directed Defendants to answer Plaintiff Smith's amended complaint by March 19, 2012, and asked the parties to file a joint status report by March 30, 2012.

Plaintiff Smith renewed her motion to certify her IMWL claims as a class action under Federal Rule of Civil Procedure 23(b)(3) on March 16, 2012. (Notably, she did not seek

---

[2] "The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin*, 632 F.3d at 974.

conditional approval of the federal collective action, though she again asserted that she would do so "shortly.") Defendants answered the amended complaint on March 19, 2012.

Just as the case finally appeared to be gaining forward momentum, however, it took yet another unexpected turn into the present procedural quagmire when Plaintiff Smith severed ties with her counsel. Rather than moving to withdraw from the case after reaching an impasse with their former client (see, *e.g.*, *Wallace v. Herron*, 778 F.2d 391, 392 (7th Cir. 1985); *Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-cv-2902, Docket No. 104 (N.D. Ill. Apr. 26, 2010); *cf. United States v. Carrera*, 259 F.3d 818, 822-23 (7th Cir. 2001)), Plaintiff Smith's counsel (hereinafter "Counsel") promptly and candidly informed the Court, by way of "Plaintiff's Counsel's Motion to Substitute Named Plaintiff," that "Plaintiff Smith and her counsel have terminated their attorney-client relationship, effective as of March 21, 2012." No new counsel entered an appearance on behalf of Plaintiff, and she did not file a *pro se* appearance; since March 21, 2012, Plaintiff Smith has demonstrated little if any interest in this case. But see docket entry 52 at 4 ("Plaintiff has personal reasons for wanting to be removed as the named Plaintiff in this case; however, Plaintiff still desires to pursue her claims through the class certification device as a class member, rather than as a lead Plaintiff. To accomplish this, Plaintiff Smith seeks to be removed as the lead Plaintiff, and her counsel seek to substitute another putative class member, Mr. Bonzeus Carranza, as the named Plaintiff in this matter."); docket entry 53 at 1 n.1 ("Plaintiff Smith remains a putative class member in this matter."). She did not seek to dismiss her case, however. See Fed. R. Civ. P. 41(a). Neither did Defendants. See Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 41(b).

Counsel expressed an interest in keeping the case alive on behalf of other members of the putative class. In the motion to substitute, Counsel represented that they were "in the process of

4

being retained by another person who would act as representative Plaintiff," but "that person and counsel have not yet entered into a representation agreement relating to this action." See generally docket entry 44. Counsel explained that "counsel desire to substitute their potential client in place of Smith as the named plaintiff and proposed class representative in this matter, as soon as practicable." Counsel also stated that "Counsel seeks leave to file an amended complaint naming the new plaintiff and proposed class representative within 30 days of an entry granting this motion." Notwithstanding the unusual nature of the motion, Counsel failed to appear to present the motion on the notice date. See docket entry 46. The Court entered and continued the motion to a future status date in April.

Approximately two weeks after they filed the motion to substitute, Counsel filed a motion for leave to file a second amended complaint. In that motion, Counsel informed the Court that they "have recently been retained by another putative class member, Bonzeus Carranza, and Plaintiff's counsel desire to substitute Mr. Carranza as the representative Plaintiff and proposed class representative in this matter." See docket entry 48 at ¶ 3. Counsel asserted that Mr. Carranza "has nearly identical claims against Defendants as the claims alleged by Smith," and opined that they "believe he will adequately represent the interests of the current putative class members." *Id.* Defendants opposed the motion.

On October 31, 2012, while the motions for class certification, substitution, and leave to file a second amended complaint were pending, Counsel filed a motion to toll the statute of limitations on the FLSA claims originally asserted by Plaintiff Smith. Counsel expressed concern that "the limitations period on each putative class member's FLSA claims has continued to run for the past [sic] during the last nineteen months since the complaint was originally filed." See docket entry 53 at ¶ 6. (An FLSA claim is not considered "commenced" for statute of

limitations purposes until an individual files his or her written consent to join a suit or otherwise initiates his or her own action. See *Zelenkia v. Commonwealth Edison Co.*, 2012 WL 3005375, at *9 (N.D. Ill. July 23, 2012)). Counsel did not, however, file the long-promised "separate motion seeking conditional collective action certification of [the] FLSA claims."

On the date for presentment of the tolling motion, the Court raised in considerable detail on the record a number of issues arising out of the series of pending motions. At that hearing, the Court specifically expressed its concern that the case may be in an "existentialist crisis" in light of the lack of an attorney-client relationship between Counsel and named-but-absent Plaintiff Smith. See Tr. 3-6, Nov. 7. 2012. The Court noted that although the pending motion for class certification might possibly serve to bridge any "jurisdictional void" created by Plaintiff's effective abdication of her position as the named plaintiff in the proposed IMWL class action, see *Phillips v. Ford Motor Co.*, 435 F.3d (7th Cir. 2006); see also *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011), the FLSA claims might require a different analysis. Tr. 4-5, Nov. 7, 2012. The Court expressed concern that it might not be possible to simply substitute a new plaintiff for a former plaintiff in the FLSA context, as one of Counsel's motions had proposed. *Id*. at 6-7. Yet, recognizing both the parties' and the Court's investment in the case to date and the understandable desire to keep it moving forward, the Court suggested that Counsel and their proposed new plaintiff, Mr. Carranza, may wish to explore whether intervention would be a better vehicle for accomplishing their purposes. *Id*.; see *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011) (explaining that permissive intervention under Rule 24(b) provides a vehicle by which an unnamed plaintiff can become the named plaintiff). The Court also inquired about the continued absence of a motion for conditional approval of a federal collective action – noting that such a filing "ought to be done sooner than

later" (Tr. 3, Nov. 7, 2012) – and provided Counsel with a sample motion that had successfully triggered notice and the opportunity for employees to "opt in" in a different but factually similar case. After the hearing, the Court entered an order instructing the parties to brief various issues, including "*any* jurisdictional issues that arise out of the termination of the attorney-client relationship between Plaintiff Smith and [Plaintiff's] counsel prior to the filing of the motion for leave to substitute party [44] and the motion for leave to file a second amended complaint [48]." See docket entry 55 (emphasis added). The Court also gave Counsel for Plaintiff Smith and Proposed Intervenor Carranza time to consider the intervention issue and to advise the Court if they wished to pursue a motion for leave to intervene or simply to stand on their prior filings. *Id.*

On November 19, 2012, Counsel did file a motion seeking leave for Mr. Carranza to intervene pursuant to Federal Rule of Civil Procedure 24. They attached to the motion a copy of the proposed second amended complaint. Defendants opposed the motion, arguing that intervention should be denied because there was no live case or controversy into which Mr. Carranza could intervene. By Defendants' reckoning, the case "died" when Ms. Smith terminated her attorney-client relationship with Counsel. In their reply brief filed on January 2, 2013, Counsel disputed that Defendants "provided any valid basis" for the Court to deny the motion to intervene, and asked the Court to either "grant Mr. Carranza's motion to intervene or, in the alternative, grant the original motion for leave to file an amended complaint." Counsel asserted that "neither Carranza nor any of the hundreds or thousands of other putative class members had reason to intervene, until such time as former Plaintiff Smith decided she no longer wanted to be the named plaintiff in this matter, and until this Court suggested intervention *sua sponte* in November, 2012." *Id.* at 5. Counsel also argued that no "jurisdictional void" was created by Ms. Smith's withdrawal from the case because she had a motion for class certification

7

pending at the time of her withdrawal and because her "claims have never formally been dismissed by this Court." *Id.* at 3.

## II. Discussion

Upon careful consideration of the issues raised by the parties and the Court itself following the notification by Counsel that they no longer had an attorney-client relationship with the sole named Plaintiff, the Court begins – and ends – its analysis by examining its subject matter jurisdiction over this case. Because "federal courts are courts of limited jurisdiction," both the parties and the Court of its own accord "have an obligation at each stage of the proceedings to ensure that we have subject matter jurisdiction over the dispute." *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 890 (7th Cir. Feb. 22, 2013); see also *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) (explaining that every federal court has an obligation to "examine its own jurisdiction before discussing the merits"); *Heinen v. Northrup Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) (stressing counsel's "professional obligation to analyze subject-matter jurisdiction before judges need to question the allegations").

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies." U.S. Const. art. III § 2; *e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984) ("Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'"). The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Thus, if a case or controversy ceases to be "live" – or "dies"– at any time during its pendency, "Article III prohibits us from reaching the merits." *Yassan v. J.P. Morgan Chase & Co.*, --- F.3d ---, No. 12-2313, 2013 WL 717481, at *3 (7th Cir. Feb. 28, 2013). "[I]t is not enough that a

8

dispute was very much alive when suit was filed," *Lewis*, 494 U.S. at 477; "if an event occurs while a case is pending * * * that makes it impossible to grant any effectual relief whatever to a prevailing party, the [case] must be dismissed." *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) (quotation omitted).

For the first year of its existence – from its inception in March 2011 until Plaintiff Smith and Counsel terminated their relationship on March 21, 2012 – this case was very much alive. Plaintiff Smith asserted six facially viable claims against Defendants, three FLSA claims and three IMWL claims, and she was actively prosecuting them. Although Plaintiff Smith purported to assert all of the claims on behalf of others similarly situated, as noted above the FLSA explicitly provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such party and such consent is filed in the court." 29 U.S.C. § 216(b). Unnamed claimants similarly situated to Plaintiff Smith thus were not parties to or bound by the result of her pending FLSA lawsuit unless and until they affirmatively opted in. See, *e.g.*, *Ervin*, 632 F.3d at 976; *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). Since Counsel did not file with the Court any request to serve notice to these potential plaintiffs or otherwise follow through on their repeated promises to initiate the conditional approval process,[3] *Ervin*, 632 F.3d at 974, these potential plaintiffs were never made aware that they needed to opt in to protect their rights. As a consequence, under settled law the FLSA's

---

[3] The Court recognizes that it has a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way," *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989), and thus should "monitor[ ] preparation and distribution of the notice." *Id.* at 172. However, to maintain its "scrupulous" respect for "judicial neutrality," the Court also must "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. Here, the Court has endeavored to balance these important considerations by requiring Plaintiff to propose a collective "class" and draft notice in the first instance. *Cf. Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (describing the standard "two-step procedure for dealing with collective actions under the FLSA," in which courts first evaluate – not create – the parties' submissions using a lenient standard, then conduct a more stringent inquiry after discovery).

strict statute of limitations continues to run for each potential plaintiff until he or she consents to join an existing action or files his or her own action. See *Zelenkia*, 2012 WL 3005375, at *9; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). The potential IMWL Act class members were not in such a precarious position; a motion for class certification has been pending at all stages of this case, thereby tolling the statute of limitations for all members of the class, see *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352-54 (1983); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974), who were automatically included in – and bound by – the suit unless they affirmatively opted *out*. See Fed. R. Civ. P. 23(c)(2)(B); *Ervin*, 632 F.3d at 976. Nonetheless, they were reliant on Plaintiff Smith, the named plaintiff, to obtain class certification and represent their interests.

On March 21, 2012, Plaintiff Smith, for whatever reason, abdicated her role in the case. At that time, any case or controversy that existed as to her personal FLSA and IMWL claims disappeared and the Court's jurisdiction over the case disappeared along with it. Not only did the federal FLSA claim become moot without a plaintiff, but the entire federal case collapsed because the FLSA claim had provided the jurisdictional hook on which this Court's authority to decide the case rested. See, *e.g.*, *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). Without a live controversy as to the sole federal claim between the parties to the action, the Court was left with a jurisdictional void that requires dismissal of the case.

Faced with the loss of Plaintiff Smith, Counsel endeavored to keep the case alive by making various attempts to install a new client, Mr. Carranza. In a mine run class action case, substitution of a previously unnamed class member for a named plaintiff who left the action "is a

10

common and normally an unexceptionable ('routine') feature of class action litigation." *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006); see also *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826-27 (7th Cir. 2011). The Seventh Circuit has explained that in the typical Rule 23 action, courts typically "disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs." *Phillips*, 435 F.3d at 787. The Seventh Circuit also has suggested that "maybe there isn't really a jurisdictional void" in typical class actions, "since the class member who steps forward to take the place of the dismissed plaintiff has a real controversy with the defendant." *Id.* Either way, had this been solely a class action case, it is likely that Mr. Carranza, an unnamed class member, could have taken up the mantle vacated by Plaintiff Smith.

The problem is that this is not and never was solely a class action case. From its inception, it was a "combined" action, *Ervin*, 632 F.3d at 974, one that contained both a putative class action and a putative collective action. The Seventh Circuit consistently has emphasized the important procedural differences between FLSA collective actions and ordinary class actions – and especially that unnamed plaintiffs must opt in to the former and opt out of the latter. See, *e.g.*, *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013); *Ervin*, 632 F.3d 971. This Court expressed concern that the parties were overlooking potentially important consequences stemming from these differences. See Tr. Nov. 7, 2012. Yet throughout the briefing on the pending motions, Counsel consistently has omitted any reference to, much less discussion of, the "differences between an FLSA collective action and a Rule 23 class action" that the Seventh Circuit discussed in *Ervin*. 632 F.3d at 976. The unique type of plaintiff substitution that courts permit in Rule 23 actions is consistent with the notions of "opting out" and the due process and preclusion concerns that attend Rule 23 class actions. It also comports

with the *American Pipe* rule that a pending motion for class certification tolls the statute of limitations for absent class members. However, as the Seventh Circuit has explained in *Ervin* and elsewhere, a different set of rules and procedures applies to FLSA claims, which involve an "opt in" process and have different statute of limitations and preclusion concerns.

Counsel has not cited any authority supporting the proposition that courts allow an unnamed, potential "opt in" FLSA plaintiff to fill a jurisdictional void created when the original – and only – FLSA plaintiff has abandoned her claim. "Congress limited the collective action under the FLSA to those who actively sought to assert their federal rights" (*Ervin*, 632 F.3d at 977), not those attorneys whose clients abandoned their suit before their rights could be fully vindicated. As a general matter, "a lawyer without a client is like an actor without a part: he has no role to play, and no lines to deliver." *Zal v. Steppe*, 968 F.2d 924, 932 (9th Cir. 1992) (Trott, J., concurring); see also *Kaufman v. CRST Lincoln Sales, Inc.*, 2013 WL 951188, at *6 (N.D. Ind. Mar. 11, 2013) ("Kaufman's attorney has presented no legal authority for why an attorney without a client should be able to pursue a claim, at the expense of the court and the opposing party, allegedly on that non-appearing client's behalf."). Counsel has not demonstrated that this general rule does not apply here. Once the FLSA claim in this case transitioned from a one-plaintiff claim to a no-plaintiff claim, neither Counsel nor any of the putative collective action members had any role to play in advancing it in its present form. Counsel's motion for intervention [56] cannot provide an entree for Mr. Carranza's FLSA claims; the intervention cases cited by Defendants (see docket entry 60 at 5 n.4) – to which Counsel did not respond – do not contemplate the unique procedural nature of FLSA claims.

To be sure, as Counsel has noted, Mr. Carranza – or any other putative collective action member – may protect his interests by filing a new FLSA lawsuit if he so desires. Because no

such lawsuit has been filed, the Court need not – and in view of the bar on advisory opinions cannot – opine on whether Mr. Carranza would have any equitable tolling or relation back arguments in regard to potential FLSA opt-in plaintiffs, or how the *American Pipe* rule may affect any IMWL class claims that he may wish to bring in a separate lawsuit. Nevertheless, it is worth noting that the standard for equitable tolling (see, *e.g., Hawkins v. Alorica, Inc.*, 2012 WL 5364434, at *4 (S.D. Ind. Oct. 30, 2012)), is difficult to satisfy and the fact that Counsel had multiple opportunities to follow through with a motion for conditional approval of the collective action and thereby start the notice and opt-in process before March 21, 2012 may well cut against any tolling argument.

Putative class members also may be able to advance their IMWL claims. The *American Pipe* rule, which is also followed by Illinois state courts (see *Phillips*, 435 F.3d at 788), tolls the statute of limitations for unnamed plaintiffs in a putative class action. Moreover, should the putative class members lack a jurisdictional basis to reassert their IMWL claims in a federal forum, Illinois law affords them one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008).

In sum, once there was no longer a case or controversy as to Plaintiff Smith's FLSA claim, Plaintiff Smith no longer had any claim in this case that lay within this Court's original jurisdiction. Because this was not solely a Rule 23 class action, Plaintiff Smith's pending motion for class certification could not bridge the jurisdictional void created by her absence. The Court lost jurisdiction over this case as of the date on which the attorney-client relationship between Smith and Counsel was terminated and therefore must dismiss the case without prejudice.

**III.     Conclusion**

For the reasons stated above, this case is dismissed without prejudice for lack of subject matter jurisdiction. All pending motions, Plaintiff's renewed motion for class certification [41], Plaintiff's motion to substitute party [44], Plaintiff's motion for leave to file a second amended complaint [48], Plaintiff's motion to toll the statute of limitations [53], and Proposed Intervenor Plaintiff's motion to intervene [56], are stricken without prejudice. Proposed Intervenor Carranza remains free to file a separate FLSA action and/or proceed with the IMWL Act claim in state court.

Dated: March 28, 2013

_____
Robert M. Dow, Jr.
United States District Judge